UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                         CRIMINAL ACTION

VERSUS                                           NO. 16-179

PHILIP BAKER, JR.                                SECTION M (3)

**ORDER & REASONS**

Before the Court is defendant Philip Baker, Jr.'s emergency motion for compassionate release or reduction in sentence.[1] The government opposes the motion.[2] Baker replies in support of his motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court denies Baker's motion.

**I.    BACKGROUND**

On July 12, 2017, Baker pleaded guilty to count 4 of the indictment filed against him: conspiracy to distribute and possess with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.[4] On November 1, 2017, he was sentenced to serve 100 months, with credit for time served since June 5, 2016, in the custody of the Bureau of Prisons (the "BOP"), and four years of supervised release.[5] Baker is presently incarcerated at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"). His projected release date is January 30, 2024.[6]

---

[1] R. Doc. 130.
[2] R. Doc. 132.
[3] R. Doc. 141.
[4] R. Docs. 1; 64.
[5] R. Doc. 88. The sentence was imposed before the case was reassigned to this section of court upon the confirmation of the undersigned. R. Doc. 122.
[6] Inmate Locator, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Aug. 10, 2020).

On April 20, 2020, due to the outbreak of the COVID-19 pandemic, Baker asked prison officials that the BOP file a motion for a reduction in sentence on his behalf, asserting that his age (47 years old) and medical issues (including congestive heart failure, cardiomyopathy, and diabetes) put him at higher risk of contracting and dying from COVID-19.[7] On May 28, 2020, the FMC Lexington warden confirmed receipt of this request and informed Baker that it was being processed for further review.[8] According to the government, the warden has not yet responded to Baker's sentence-reduction request.[9] Previously, Baker had requested that the BOP transfer him to home confinement; the warden denied this request on April 23, 2020, explaining that he did not meet the eligibility criteria for home confinement based on a review of his prior criminal history and that his Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN")[10] score is not minimum.[11]

On May 5, 2020, Baker tested positive for COVID-19 infection.[12]

## II.  PENDING MOTION

Baker, *pro se*, now moves the Court to consider his request for compassionate release or a reduction in sentence in accordance with 18 U.S.C. § 3582(c)(1)(A).[13] Baker states that according to guidelines implemented by the Centers for Disease Control and Prevention (the "CDC"), his chronic medical conditions make him vulnerable to COVID-19.[14] He asserts that the warden and prison officials at FMC Lexington have not followed CDC guidelines and failed to prevent a

---

[7] R. Doc. 132-1 at 1.
[8] *Id.* at 2.
[9] R. Doc. 132 at 9.
[10] This tool is designed to measure risk of recidivism of inmates. *See Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation*, U.S. DEP'T OF JUSTICE (Jan. 15, 2020), https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act.
[11] R. Doc. 130 at 9.
[12] *Id.* at 10.
[13] R. Doc. 130.
[14] *Id.* at 6.

COVID-19 outbreak at the facility.[15] He contends that he is qualified for compassionate release due to his contracting COVID-19 together with his medical conditions, which satisfy the "extraordinary and compelling reasons" standard.[16]

In opposition, after detailing the BOP's response to the COVID-19 pandemic,[17] the government posits that the Court has jurisdiction to consider Baker's motion because his April 20, 2020 petition for compassionate release – the relevant petition for purposes of exhaustion (as opposed to his petition for transfer to home confinement) – has gone unanswered by the FMC Lexington warden.[18] The government then acknowledges that Baker has demonstrated an "extraordinary and compelling reason" warranting release in light of the COVID-19 pandemic: Baker suffers from type-2 diabetes, which the CDC has listed as an underlying medical condition that increases the risk for severe illness from the coronavirus.[19] The government maintains, however, that Baker's request should nonetheless be denied because he has failed to demonstrate that he is not a danger to the safety of the community, as he must show pursuant to the applicable U.S. Sentencing Commission policy statement, U.S.S.G. § 1B1.3(2), or that he merits release under the sentencing factors listed in 18 U.S.C. § 3553(a), which must be considered when determining whether compassionate release under § 3582(c)(1)(A) is warranted.[20] In arguing that Baker would be a risk to the community if released, the government stresses Baker's conduct in the instant offense ("transporting nearly one pound of methamphetamine from Texas to Louisiana and calling his wife and coconspirator … from prison to instruct her to hide a firearm and marijuana from law enforcement"), having been disciplined for possession of a cell phone while

---

[15] *Id.* at 6-7.
[16] *Id.* at 7.
[17] R. Doc. 132 at 2-6.
[18] *Id.* at 9.
[19] *Id.* at 9, 11.
[20] *Id.* at 12.

incarcerated, and his "long criminal history" of drug offenses, noting that a firearm belonging to Baker was found in his car during one of his drug arrests.[21] Turning to the § 3553(a) sentencing factors, the government emphasizes Baker's leadership role in the drug conspiracy for which he was sentenced, as evidenced by his call and instruction to his coconspirator from prison.[22] To the extent that other factors may have weighed in favor of a shorter sentence, the government asserts that the sentencing judge already considered them in imposing a below-guidelines sentence of 100 months, 35 months shorter than the low-end of the applicable sentencing guidelines range, and so the Court should not now reduce his sentence to an even lower term of imprisonment.[23]

In reply, Baker contends that the BOP's efforts to contain the virus have failed, pointing to his own contraction of the disease as an example.[24] He asserts that although "he has yet to develop symptoms," he is "already suffering adverse effects" due to being "'isolated' with other inmates who had once been tested positive, but all of which have not been re-tested," adding that testing positive for COVID-19 is an especially "frightening experience for … those who already are in poor health and have documented medical history of conditions that are high on the list" of those most affected by the virus.[25] Baker argues that "FMC Lexington's 'cohorting' of individuals who test positive is very plainly against the CDC guidance and poses a danger of worsening the condition of already-COVID-19 positive inmates" as "exhibited by the re-infection of six individuals already housed with [him]."[26] He asserts that his COVID-19 diagnosis has made it "substantially harder for [him] to provide self-care within the prison environment."[27] Baker maintains that although the BOP medical staff has classified his COVID-19 infection as

---

[21] *Id.* at 12-13 (citing R. Doc. 75 (presentence investigation report) at ¶¶ 21-37, 41, 55-73).
[22] *Id.* at 13.
[23] *Id.*
[24] R. Doc. 141 at 1-3.
[25] *Id.* at 4 (emphasis added).
[26] *Id.*
[27] *Id.*

4

"resolved," the possibility of re-infection is a "real issue," and moreover, he has not been "tested for any possible other organ damage or side effects of continuing damage."[28] According to Baker, the "severity of re-infection is not predicated upon severity of a victim's previous mild or severe reactions."[29] Baker asks that were the Court to grant a reduction of his term of imprisonment and order supervised release with terms of home confinement, the Court include conditions of release that allow him to seek employment.[30]

### III.  LAW & ANALYSIS

"The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582." *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010). Section 3582(c), as amended by the First Step Act, provides that "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). The reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).[31] "The Sentencing Commission's relevant policy statement provides that extraordinary circumstances exist when the

---

[28] *Id.* at 6, 10, 16, 18.
[29] *Id.* at 20.
[30] *Id.* at 30.
[31] The policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, resulting in a discrepancy as to who may bring § 3582(c) motions in court (the relevant policy statement continues to provide that a term of imprisonment may be reduced only upon a motion by the director of the BOP), which has led some courts to conclude that the Sentencing Commission does not have a policy position applicable to motions brought by defendants pursuant to the First Step Act, while others have held that the policy statement may be helpful but not dispositive in deciding such motions. *United States v. Perdigao*, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (discussing U.S.S.G. § 1B1.13, and collecting cases). The Court agrees with those courts finding that the relevant policy statement is instructive to the determination of whether "extraordinary and compelling reasons" exist to warrant a sentence reduction. *See id.*; *United States v. LeBlanc*, 2020 WL 2331690, at *2 (E.D. La. May 11, 2020) (citations omitted).

defendant suffers from a terminal illness or 'serious physical or medical condition' that 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *Perdigao*, 2020 WL 1672322, at *1 (quoting U.S.S.G. § 1B1.13).  The policy statement also provides that a sentence may only be reduced if the court determines that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).  Section 3142(g) requires the court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large posed by the defendant's release.  18 U.S.C. § 3142(g).

A court may not consider a defendant's § 3582 motion for a modification of a term of imprisonment until "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier … ." 18 U.S.C. § 3582(c)(1)(A).  "The requirement that an inmate first exhaust his administrative remedies within the BOP is jurisdictional." *United States v. Gentry*, 2020 WL 2131001, at *2 (W.D. La. May 5, 2020) (citing *Garcia*, 606 F.3d at 212 n.5); *see United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (characterizing the defendant's failure to exhaust administrative remedies as "a glaring roadblock foreclosing compassionate release at this point").[32]  "Even in the context

---

[32] The Court notes that district courts within the Fifth Circuit are split on whether this exhaustion requirement is jurisdictional and thus not amenable to waiver or other exceptions. *United States v. Powell*, 2020 WL 4210478, at *3 (S.D. Miss. July 22, 2020) (citing *United States v. Echols*, 2020 WL 2309255, at *2 (N.D. Miss. May 8, 2020) (comparing cases)).  Regardless, § 3582(c)(1)(A) "does not provide an exception to this mandatory statutory exhaustion requirement, equitable or otherwise." *United States v. Blevins*, 2020 WL 3260098, at *2 (S.D. Miss. June 16, 2020) (citation omitted); *see also United States v. Ng Lap Seng*, 2020 WL 2301202, at *5 (S.D.N.Y. May 8, 2020) ("[I]t does matter whether section 3582(c) is a jurisdictional statute or a non-jurisdictional claim-processing statute, because its exhaustion requirement is clearly statutory and therefore mandatory.") (citations omitted).

of the COVID-19 pandemic, a defendant must first satisfy the exhaustion criteria of 18 U.S.C. § 3582(c)(1)(A) in order for the Court to have jurisdiction over a motion for a compassionate release sentence reduction." *United States v. Castro*, 2020 WL 3076667, at *1 (E.D. La. June 10, 2020) (collecting cases). "This conclusion is supported by a number of cases in which courts have addressed motions for compassionate release under the FSA [First Step Act] due to COVID-19 and found they do not have the authority to address those motions when the defendants have not first satisfied the exhaustion requirements of the FSA." *United States v. Guyton*, 2020 WL 2128579, at *2 (E.D. La. May 5, 2020) (quotation omitted; collecting cases). The defendant must demonstrate that he has exhausted his administrative remedies and that he is entitled to compassionate release. *Castro*, 2020 WL 3076667, at *2 (citations omitted); *see United States v. Murray*, 2020 WL 4000858, at *2 (E.D. La. July 15, 2020) (explaining that the defendant bears the burden of demonstrating (1) whether he has exhausted administrative remedies; (2) whether extraordinary and compelling reasons warranting release exist; and (3) whether he poses a danger to the safety of any other person or society) (citing *United States v. Davis*, 2020 WL 2838588, at *2 (E.D. La. June 1, 2020)).

### A. Exhaustion of Administrative Remedies

Baker submitted his sentencing reduction request via an email to prison staff on April 20, 2020.[33] Because more than 30 days passed after that date, without the warden approving or

---

[33] R. Doc. 132-1 at 1. Although the warden did not formally confirm receipt of his request until May 28, 2020, the Court finds that the operative date for calculating the 30-day lapse period under 18 U.S.C. § 3582(c)(1)(A) is April 20, 2020, the date that Baker submitted his request to prison officials. *See United States v. Feucht*, 2020 WL 2781600, at *2 (S.D. Fla. May 28, 2020) (finding that the "30-day period should be measured from the date on which a prisoner submits his or her request to the BOP, not the date the request is received by the Warden," consistent with the "prisoner mailbox rule which provides that a *pro se* prisoner's legal submission is considered filed on the date it is delivered to prison authorities for mailing, rather than the date it is received by the Court") (quotation marks and citation omitted); *United States v. Resnick*, 2020 WL 1651508, at *6 (S.D.N.Y. Apr. 2, 2020) (analogizing situation to the "prisoner mailbox rule") (citing *Houston v. Lack*, 487 U.S. 266, 276, 282 (1988)).

denying the request (and as of June 24, 2020, the warden still had not responded to the request),[34] Baker exhausted his administrative remedies before filing the present motion.[35] Accordingly, the Court has jurisdiction to consider the merits of Baker's motion.

### B. Extraordinary and Compelling Reasons

In its opposition memorandum, the government concedes that Baker's type-2 diabetes, which according to the CDC places him at risk of severe illness from COVID-19, provides a sufficiently "extraordinary and compelling reason" for release.[36] But although the government acknowledges that Baker tested positive for COVID-19 on May 5, 2020, and notes that he did not report any symptoms such as fever or chills in the days following his diagnosis and that he has been regularly treated by BOP medical staff,[37] the government does not address how Baker's COVID-19 diagnosis affects its conclusion that his having type-2 diabetes in light of the COVID-19 pandemic constitutes an "extraordinary and compelling reason" for release. Courts have denied COVID-19-based motions for compassionate release filed by inmates who have already contracted the virus. *See, e.g., United States v. Dan*, 2020 WL 3453845, at *5 (D. Haw. June 24, 2020) (explaining that defendant already tested positive for COVID-19, was deemed recovered, and did not claim that he was currently suffering from any symptoms); *United States v. Mogan*, 2020 WL 2558216, at *4 n.29 (E.D. La. May 20, 2020) ("[G]iven Petitioner's current COVID-19 diagnosis,

---

[34] R. Doc. 132 at 9. This Court agrees with those courts interpreting § 3582(c)(1)(A)'s "lapse of 30 days" language "as requiring the BOP's ***failure to respond*** to a prisoner's request for a compassionate release motion within thirty days," rather than requiring simply the passage of 30 days following the warden's receipt of the request. *United States v. Ng Lap Seng*, 2020 WL 2301202, at *6 (S.D.N.Y. May 8, 2020) (emphasis added); *see United States v. Greenlove*, 2020 WL 3547069, at *3 (M.D. Pa. June 30, 2020) (agreeing with *Np Lang Seng*); *see also United States v. Powell*, 2020 WL 4210478, at *3 (S.D. Miss. July 22, 2020) (comparing cases, and agreeing with *Np Lang Seng*).

[35] Baker's motion was signed on May 28, 2020, and processed for mailing by prison officials on June 8, 2020. R. Doc. 130 at 8, 17. As a prisoner proceeding *pro se*, Baker's pleading is deemed to have been filed on the date that he submits the pleading to prison authorities for mailing, so long as he completed everything within his control to deliver the pleading to the court (the prisoner mailbox rule). *Brown v. Taylor*, 559 F. App'x 212, 213 (5th Cir. 2014); *Stoot v. Cain*, 570 F.3d 669, 671 (5th Cir. 2009).

[36] R. Doc. 132 at 11.

[37] *Id.* at 2 n.3.

granting his request would not enable him to obtain the relief he sought by filing this motion – avoiding contracting COVID-19."); *United States v. Russo*, 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020) (denying otherwise meritorious motion for compassionate release because defendant tested positive for COVID-19 during the pendency of the motion); *see also United States v. McCollough*, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) ("Since Defendant has contracted COVID-19, the relevant questions concern (1) the course of his illness, (2) the state of his health, (3) his prognosis, and (4) the adequacy of the care and treatment being provided to him in BOP given his pre-existing conditions. … Defendant had a mild case of the virus and has recovered. There is no evidence that the circumstances surrounding Defendant's health or treatment are extraordinary or compelling.").

Baker – who did not exhibit symptoms of COVID-19 while infected and has not reported any worsening of his health conditions – insists that he remains at risk of a second infection, a resurgence of the original virus infection, or residual issues such as organ damage.[38] But the Court does not see how releasing Baker to home confinement would do anything to prevent the latter two possibilities. *See Russo*, 2020 WL 1862294, at *8 ("At this time, the Court cannot say that the [COVID-19-positive defendant] … would be made safer by [his] transfer to a halfway house."). And according to the CDC's current findings, "there have been no confirmed cases of SARS-CoV-2 [COVID-19] reinfection." CTRS. FOR DISEASE CONTROL & PREVENTION, *Coronavirus Disease 2019 (COVID-19): Duration of Isolation and Precautions for Adults with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last visited Aug. 10, 2020); *see also United States v. Decker*, 2020 WL 3268706, at *2 (S.D.N.Y. June 17, 2020) ("However remote or probable, the possibility of reinfection is speculative, as no definitive

---

[38] R. Doc. 141 at 18.

medical conclusions have been reached on [whether] prior infection with COVID-19 results in immunity from future infection (as is the case with some but not all viral infections) and, if so, the duration of any such immunity.").

While Baker suffers from medical conditions that place him at risk of serious illness of COVID-19 (*viz.*, type-2 diabetes,[39] congestive heart failure, and nonischemic cardiomyopathy[40]), fortunately, he did not become severely ill or develop life-threatening complications when he did in fact contract the virus, such that he would no longer be able to provide self-care while incarcerated.  *See Dan*, 2020 WL 3453845, at *5 ("Defendant claims that he suffered a number of [COVID-19] symptoms, none of which were so severe as to require medical treatment or hospitalization."); *Russo*, 2020 WL 1862294, at *8 ("There also is no suggestion that the [defendant's] condition [due to COVID-19 infection] is terminal."); *cf. United States v. McCall*, 2020 WL 2992197, at *2 (M.D. Ala. June 4, 2020) (granting motion for compassionate release for COVID-19-positive inmate with sickle cell disease whose condition was life-threatening and for whom the BOP had not been able to provide adequate medical care).  Rather, it appears that Baker was asymptomatic.  Although the Court does not doubt that contracting COVID-19 as a person in poor health may be a "frightening experience," this is not a reason to grant the extraordinary relief Baker seeks.  Moreover, despite his conclusory assertions, Baker has not shown that the BOP is not providing him with adequate medical care.[41]  The Court does not find that the possibility of

---

[39] R. Doc. 130 at 11; *see Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 10, 2020) ("Having type 2 diabetes increases your risk of severe illness from COVID-19.").

[40] R. Doc. 132-4 (sealed medical records) at 2, 26; *see Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 10, 2020) ("Having [heart failure or cardiomyopathies] increases your risk of severe illness from COVID-19.").

[41] On the contrary, Baker's records show that the BOP has provided extensive medical care for his various health conditions, including COVID-19 infection, while incarcerated.  *See* R. Doc. 132-4.

Baker's becoming reinfected with COVID-19 – which remains speculative – rises to the level of an "extraordinary and compelling reason" for release. *See United States v. Davis*, 2020 WL 3790562, at *3 (S.D.N.Y. July 7, 2020) ("Although the Court understands [the defendant's] concerns of reinfection, it cannot conclude that this risk is an extraordinary and compelling reason for a significant sentence reduction."); *McCollough*, 2020 WL 2812841, at *2 ("Arguments that … Defendant could suffer reinfection are not persuasive and the Court will not speculate about these possibilities."). After all, COVID-19 is not confined to the prison setting, so the risk of reinfection may be no worse in prison than out, in home confinement or otherwise.

### C. Danger to the Community and § 3553 Sentencing Factors

Even if Baker had demonstrated that "extraordinary and compelling reasons" exist to warrant his release, he has not shown that he does not pose a danger to the safety of others. *See* 18 U.S.C. § 3142(g). Indeed, Baker puts forward no effort to meet this burden. Furthermore, release is not warranted in light of the applicable factors set forth in § 3553(a).[42]

Baker requests that along with home confinement, any conditions of release "allow [him] to seek employment as well as attend church services, be with his family, attend important medical services and receive treatments for his ailments."[43] But he does not address how he will not present

---

[42] These factors include:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed –
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
   …
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; … .
18 U.S.C. § 3553(a).

[43] R. Doc. 141 at 30.

11

a danger to the safety of the community he seeks to rejoin. Baker's offense of conviction was conspiracy to distribute and possess with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine. As the government points out,[44] conduct relevant to this offense included Baker's instructing his coconspirator to hide a firearm and marijuana from law enforcement.[45] Baker's criminal history includes convictions for theft, simple battery, violation of a protective order, possession with intent to distribute marijuana, possession with intent to distribute Xanax, attempted possession of a firearm with controlled dangerous substance, and disturbing the peace; and arrests for unauthorized entry of a place of business, aggravated assault, careless operation of a vehicle and driving while intoxicated, possession of a firearm by a convicted felon, and several other drug crimes.[46] What's more, Baker has been disciplined while incarcerated.[47] The BOP determined that Baker has a "medium" – not minimum – level risk of recidivism.[48] The Court cannot say that Baker does not pose a danger to others if released.

Baker's applicable sentencing guidelines range for the instant offense was 97 to 121 months' imprisonment.[49] In sentencing Baker to 100 months' imprisonment (which was at the low end of the guidelines range) and four years of supervised release, the Court took into account, among other things, Baker's many serious health conditions (*viz.*, congestive heart failure, cardiomyopathy, diabetes, pulmonary nodules, bowel obstruction, and chronic systolic heart failure).[50] Thus far, Baker has served approximately 50 months of his 100-month sentence. Baker

---

[44] R. Doc. 132 at 12-13.
[45] *See* R. Doc. 75 at ¶¶ 29-33, 41.
[46] *Id.* at ¶¶ 55-73.
[47] *See* R. Doc. 132-2.
[48] *See* R. Docs. 130 at 9; 141-1 at 5 ("You have a FSA [First Step Act] Recidivism level medium at this time[;] you do not meet the qualifications.").
[49] R. Doc. 75 at 23. The PSR was adopted by the Court, as amended in response to Baker's objections.
[50] *See* R. Doc. 85 (sealed defense sentencing memorandum) at 7.

has not demonstrated that his circumstances have changed such that an even lower sentence – one that is 47 months lower than the bottom of his guidelines range – would reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from any further crimes he may commit, and avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a); *see United States v. Koval*, 2020 WL 4476554, at *5, 8 (E.D. Cal. Aug. 4, 2020) (denying compassionate release for defendant with congestive heart failure and several other serious health conditions who had tested positive for COVID-19 and who had served 31 months of his 46-month sentence, already at the low end of his guidelines range, explaining that a 31-month sentence would be "well below" his guidelines range and would not satisfy the § 3353(a) factors); *United States v. Terry*, 2020 WL 3264086, at *1, 4-5 (D.N.J. June 17, 2020) (denying compassionate release for defendant with type-2 diabetes and hypertension who had several prior felony convictions and who had 41 months left to serve on his 110-month sentence, which was at the bottom of his guidelines range, explaining that "a significant balance of the price of past criminal activity remains to be paid"); *United States v. Hill*, 2020 WL 3037226, at *4 (W.D. Ark. June 5, 2020) (finding that compassionate release was not warranted for defendant convicted of possession with intent to distribute more than 50 grams of methamphetamine who had an "extensive criminal history," explaining that the court already took into account, among other things, his age and poor health when sentencing him at the bottom of his guidelines range); *United States v. Hunt*, 2020 WL 1493042, at *7 (W.D. La. Feb. 19, 2020) (finding that compassionate release was not warranted for defendant convicted of conspiracy to distribute and possess with intent to distribute methamphetamine, who had a "long history" of

drug-related convictions, and whose 120-month sentence took into account his "notably poor health" and was one month below the applicable guidelines range).

A reduction in sentence or compassionate release is not warranted.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Baker's emergency motion for compassionate release or reduction in sentence (R. Doc. 130) is DENIED.

New Orleans, Louisiana, this 10th day of August, 2020.

                                                        _____
                                                        BARRY W. ASHE
                                                        UNITED STATES DISTRICT JUDGE